United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 5, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-20560
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAIME FABIAN,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas, Houston
4:02-CR-353-2

_____

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

In early May of 2002, a confidential source ("CS") brokered a drug transaction between Javier Gonzalez, a co-defendant in the court below, and an undercover DEA agent. The agent was to pay Gonzalez $80,000 in exchange for five kilograms of cocaine. The sale was originally expected to occur on May 9, 2002, but it was rescheduled for May 29. On that day, the CS and the undercover

_____

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

agent reported to a nightclub where the three men had agreed to meet. The CS went inside while the undercover agent waited in the car. Additional agents were also stationed outside, expecting to arrest Gonzalez at the scene. The plan was for the CS to see the cocaine, then claim that the money was outside and go to retrieve it, at which point the agents would sweep in and arrest Gonzalez. However, less than five minutes later, the CS and Gonzalez exited the club and got into a car. Gonzalez drove to a residence in Houston owned by the defendant, Jaime Fabian. They waited in the car for a short time until Fabian and another man, Gustavo Salgado, arrived, at which point all four men went into the house together.

The police had expected the transaction to occur at the nightclub, and they scrambled to keep surveillance on Gonzalez and the CS as they drove to the house and went inside. Within a few minutes of entering the home, Gonzalez showed the CS a stash of cocaine. Then the two left the home, ostensibly to retrieve the $80,000. That is when the agents decided not to get a search warrant, and instead swooped in. They were not subtle about it. The agents drove a car up on the front lawn, tires screeching, and then yelled loudly that they were the "police." They arrested Gonzalez and the CS in front of the house before they reached the car. They then knocked on the front door, announced that they were police, and entered. They found Fabian in the living room, and Salgado in a bedroom. In the laundry room they found six bundles of cocaine in plain view.

2

At a suppression hearing before trial, Fabian argued that there were not sufficient exigent circumstances to justify the warrantless entry into the home. He also argued that if exigent circumstances were present, they were manufactured by the police, who decided to arrest Gonzalez at the scene, and to do so loudly and dramatically, rather than follow him back to the nightclub and arrest him there. The district court carefully considered the exigency of the situation and ruled that the entry was justified. Specifically, the court found that the arrest was conducted in a manner loud enough to alert the entire neighborhood, which created sufficient exigency to justify the immediate entry into the residence. The court also found that the exigency was not created by the agents, but by Gonzalez's attempt to leave in his car with Fabian. On appeal, Fabian urges the same two arguments regarding exigent circumstances.

In reviewing a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions *de novo*. *United States v. Lopez-Moreno*, 420 F.3d 420, 429 (5th Cir. 2005) (citations omitted). The presence of exigent circumstances is a finding of fact, so our inquiry is whether that finding was clearly erroneous. *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993) (citations omitted). Exigent circumstances include hot pursuit of a suspected felon, the possibility that evidence may be removed or destroyed,

and danger to the lives of officers or others. *Id.* at 247–48. The district court may consider several factors in determining whether exigent circumstances are present, including (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the reasonable belief that the contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site while a warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructability of the contraband. *Id.* at 248 (citations omitted). Regardless of the urgency of the situation, however, exigent circumstances will not pass Fourth Amendment muster if the officers deliberately create them. *Id.* (citations omitted).

In this case, the district court did not clearly err in finding exigent circumstances justifying the warrantless entry. One agent testified that when the agents arrested Gonzalez, they drove up on the front lawn and blocked him from reaching his vehicle. Another agent testified that the process was very loud, and that the entire neighborhood might have heard it. In light of these facts, it is entirely plausible that Fabian and Salgado, who were still inside the home, could have heard the commotion and either attempted to flee the scene or destroy the evidence. Therefore, we cannot say that the court's ruling on exigency was clearly erroneous.

It is a closer question whether the agents themselves created the exigency, since they chose to carry out the arrest on the front lawn in such a dramatic fashion. Here again, however, we find the court's ruling entirely sound. The agents testified that if they had let Gonzalez and the CS take to the road again, they would have lost considerable tactical control over the situation and exposed the CS to unwarranted risk. The district court was persuaded by this testimony and concluded that Gonzalez's departure, not the agents, created the exigency in the first instance. The defendant urges that it would have been better to allow Gonzalez to return to the nightclub and arrest him there. Even if we agreed with the defendant, we certainly would not say that the district court's conclusion was clearly erroneous. There was ample reason to believe that the agents' decision to arrest Gonzalez at the house was safer for both the CS and the agents, and there is no indication that the agents acted any more dramatic than usual in effecting that arrest.

In light of the foregoing, the district court's ruling is AFFIRMED.